IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TOO MARKER PRODUCTS, INC. a
Japanese corporation, and
IMAGINATION INTERNATIONAL,
INC., an Oregon corporation,

           Plaintiffs,

v.

SHINHAN ART MATERIALS, INC., a
Korean corporation, SHINHAN USA,
C2F, INC., an Oregon corporation, and
BONGKEUN HAN, an individual,

           Defendants.

No. CV 09-1013-PK

OPINION AND ORDER

**MOSMAN, J.,**

Plaintiffs Too Marker Products, Inc. ("Too Marker") and Imagination International, Inc. seek to restrain and enjoin defendant-competitors Shinhan Art Materials, Inc., Shinhan USA, and C2F, Inc. (together, "Shinhan") from, inter alia, importing, selling, or displaying defendants' TOUCH brand markers, or any other square-bodied markers that imitate plaintiffs' marker configuration, in the United States. (*See* Plaintiffs' Motion for Preliminary Injunction (#7); Plaintiffs' Motion for Temporary Restraining Order (#17).) For the reasons set forth below, I DENY plaintiffs' Motion for Preliminary Injunction (#7) and Motion for Temporary Restraining Order (#17).

## BACKGROUND

Plaintiff Too Marker developed a square-bodied, double-nibbed art marker that it began

PAGE 1 - OPINION AND ORDER

selling under the "COPIC" brand name in Japan twenty years ago. (Mem. in Supp. of Pls.' Mot. for Prelim. Inj. (#8) 1.) Ten years ago, Too Marker began distributing its markers in the United States through plaintiff Imagination International, Inc. (*Id.*) Too Marker obtained the following United States Trademark Registration No. 3,629,617 in June 2009 for the product configuration of a square-bodied marker:

> The mark consists of a configuration of a marker having a squarish cross-sectional shape in which terminal portions of both end caps of the marker are indented relative to the body of the marker and a band, which indicates the placement of a contrasting color, is integrally formed in the body of the marker at the juncture of the end cap and body, the squarish cross-section having rounded corners and the end caps having flat ends . . . .

(Murphy Decl. (#9) Ex. A.) Too Marker also relies on trade dress protection for "a square end-capped marker." (Mem. in Supp. of Pls.' Mot. for Prelim. Inj. (#8) 13.)

Defendant Shinhan also sells art markers in the United States, and has done so since 2004. (Defs.' Resp. (#25) 2.) Plaintiffs allege Shinhan has had three versions of the marker in question, which plaintiffs refer to as TOUCH 1 (released in 2004), TOUCH 2 (released in 2007), and TOUCH 3 (released recently, in 2009).[1] (*See* Mem. in Supp. of Pls.' Mot. for Prelim. Inj. (#8) 9-11.) Plaintiffs concede that they seek to enjoin only the TOUCH 3 version. (Pls.' Reply (#32) 13.) They argue that the TOUCH 3 marker infringes on Too Marker's registered trademark and trade dress.

Plaintiffs filed a Motion for Preliminary Injunction (#7) on October 27, 2009. Subsequently, defendants filed a Motion for Extension of Time (#15), seeking to delay their response to plaintiffs' preliminary injunction motion until January 2010. Plaintiffs filed a Motion

---

[1] I note, however, that defendants refer only to two marker designs, one in 2004 and one in 2007. (Defs.' Resp. (#25) 2.)

PAGE 2 - OPINION AND ORDER

for Temporary Restraining Order (#17) the same day, alleging that the extension would cause irreparable harm by allowing defendants to sell Shinhan's TOUCH 3 marker during the holiday season and at industry trade shows in early 2010. (*See* Pls.' Mot. for TRO (#17) 5-6.) Plaintiffs also re-alleged irreparable harm as described in their Motion for Preliminary Injunction. (*Id.* at 5.) Defendants filed a Response (#25) to the TRO motion and plaintiffs filed a Reply (#32) addressing the merits of the requested restraining order and injunction.

The parties appeared for a hearing on November 12, 2009. Pursuant to the briefing and discussion at the hearing, it became clear that a primary dispute regarding the motions for TRO and preliminary injunction centered on application of the functionality doctrine.[2] The parties submitted supplemental briefing on functionality at my request. Because the issues and standards in plaintiffs' Motion for Temporary Restraining Order and Motion for Preliminary Injunction are identical, the following analysis applies to both. Given the supplemental briefing, I do not believe that further briefing is necessary on this issue so I also DENY defendants' Motion for Extension of Time (#15) as MOOT.

## DISCUSSION

The same legal standard applies to temporary restraining orders and preliminary injunctions sought pursuant to Federal Rule of Civil Procedure 65, both of which seek to preserve the status quo until the next step in litigation. *See Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To restrain or enjoin a defendant from acting, a plaintiff must show: (1)

---

[2] Defendants also dispute secondary meaning and likelihood of confusion, but functionality drove the discussion because it is a threshold issue.

likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Nelson v. Nat'l Aeronautics & Space Admin.*, 568 F.3d 1028, 1030 n.5 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008)).

I.  **Likelihood of Success on the Merits**

As is often the case, Too Marker's likelihood of success on the merits drives the temporary restraining order or preliminary injunction analysis on these facts. Plaintiffs assert trademark infringement and unfair competition claims against defendants under 15 U.S.C. §§ 1114, 1125. (*See* Compl. (#1).) When trademark and unfair competition claims are based on the same infringing conduct, courts apply the same analysis to both claims. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 n.2 (9th Cir. 1992). In order to succeed on the merits of their claims, plaintiffs must show: (1) the design is nonfunctional; (2) the design is inherently distinctive or has acquired distinctiveness through a secondary meaning; and (3) the public will likely confuse plaintiffs' products with defendants' products. *See Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir. 1998); *Int'l Jenson, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 823 (9th Cir. 1993). If a trademark is deemed functional, and therefore invalid, the inquiry ends because the plaintiff no longer has a valid trademark upon which to sue for infringement. *Talking Rain Beverage Co., Inc. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) ("In light of this conclusion [that the product design is functional], we need not reach the distinctiveness and likelihood of confusion issues.").

"Trademark or trade dress protection extends only to product features that are nonfunctional." *Disc Golf*, 158 F.3d at 1006. A trademark registration, however, creates a

PAGE 4 - OPINION AND ORDER

rebuttable presumption the registered mark or configuration is valid and, therefore, nonfunctional. *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 782 (9th Cir. 2002). An unregistered mark or trade dress places the burden on the plaintiff to establish nonfunctionality. *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001). In this case, defendants must prove at trial that Too Marker's registered product configuration is actually functional and invalid while plaintiffs must prove at trial that the asserted trade dress is nonfunctional. Plaintiffs and defendants agree the relevant analysis is that of utilitarian functionality, not aesthetic functionality. (*See* Pls.' Supplemental Br. (#41) 9 ("utilitarian functionality [analysis] applies"); Defs.' Supplemental Br. (#40) 3-4 (describing the applicable functionality test as that from *Inwood Laboratories*, or utilitarian functionality).)

### A.  *Supreme Court Instruction on Functionality*

Both parties refer to the two Supreme Court cases that established the standard for utilitarian functionality. *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159 (1995); *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982). A product feature is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Qualitex*, 514 U.S. at 165 (quoting *Inwood Labs.*, 456 U.S. at 850 n.10). Plaintiffs and defendants agree that the elements of plaintiffs trademark and trade dress are not "essential" to the use or purpose of a marker, and that the elements do not make marker production less expensive, as is often the issue in cases addressing the "cost" factor.

Instead, the present argument rests on proper interpretation of the term "quality." (*See* Pls.' Supplemental Br. (#41) 6 ("the term 'affects the quality' in *Inwood* means that . . . the proffered design works better than the alternatives"); Defs.' Supplemental Br. (#40) 7 ("The plain

PAGE 5 - OPINION AND ORDER

language of the *Qualitex* opinion supports the proposition that a 'useful' feature can affect the 'quality' of an article and is therefore functional.").) Defendants point to Supreme Court and Ninth Circuit caselaw to support their interpretation of "quality" as "usefulness." First, Shinhan refers to language directly from *Qualitex*, which stated "[t]he functionality doctrine prevents trademark law . . . from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex*, 514 U.S. at 164. Shinhan also quotes the more recent *TrafFix* case, which noted that the design in question "serves the important purpose of keeping the sign upright even in heavy wind conditions; and . . . it does so in a unique and useful manner." *TrafFix*, 532 U.S. at 31 (finding the design functional and not protected by trademark law). Furthermore, Ninth Circuit caselaw supports defendants' interpretation of "quality," while that court also reads *TrafFix* to significantly discount plaintiffs' proposed interpretation.

B.  *Ninth Circuit Instruction on Functionality*

The Ninth Circuit typically considers four factors to determine whether a product feature is functional under the utilitarian functionality doctrine as set forth in *Qualitiex*: (1) whether advertising touts the utilitarian advantages; (2) whether the particular design results from a comparatively simple or inexpensive method of manufacture; (3) whether the design yields a utilitarian advantage, and (4) whether alternative designs are available. *Talking Rain*, 349 F.3d at 603; *Disc Golf*, 158 F.3d at 1006. The Ninth Circuit continues to employ these factors following the Supreme Court's opinion in *TrafFix*, with one slight, but important, change in the analysis:

> In applying the *Disc Golf* factors, we are mindful of the Supreme Court's recent pronouncement that once functionality is established, "[t]here is no need . . . to engage . . . in speculation about other design possibilities . . . ." *TrafFix*, 532 U.S. at 33, 121 S.Ct. 1255. Therefore, the existence of alternative designs cannot negate a trademark's functionality. But the existence of alternative designs may indicate

whether the trademark itself embodies functional or merely ornamental aspects of the product. *See id.* at 34, 121 S.Ct. 1255.

*Talking Rain*, 349 F.3d at 603.

In *Talking Rain*, the court focused on the usefulness of the bottle design in question, discussing the ease with which consumers could use the product, and quoted a Second Circuit case finding that a similar bottle design created "a very useful groove" with which to comfortably grip the bottle. 349 F.3d at 604 (quoting *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 120 n.4 (2d Cir. 2001)). Furthermore, the language in *TrafFix* and the Ninth Circuit's interpretation of it as significantly reducing the importance placed upon alternative designs diminishes plaintiffs' argument that "quality" refers to a design's superiority as compared to alternatives.

### C. *Too Marker's Registered Product Configuration*

In turning to the facts of this case, I note at the outset that neither party offered an analysis of Too Marker's registered product configuration (or unregistered trade dress) under the Ninth Circuit's four-factor test for functionality. Here, Too Marker's registered product configuration consists of four elements: (1) a square body; (2) indented end caps; (3) color bands on each end; and (4) rounded ends or corners from which the nibs extend. (*See* Mem. in Supp. of Pls.' Mot. for Prelim. Inj. (#8) 15; Defs.' Resp. to Pls.' Motion for TRO (#25) 7.) Shinhan briefly points to alleged advertising on Too Marker's website touting the roll resistance of the square-bodied marker. (Defs.' Resp. (#25) 13.) Defendants primarily argue, however, that each element of the product design yields a useful, utilitarian advantage and goes to the "quality" prong of the *Qualitex* test.

PAGE 7 - OPINION AND ORDER

Shinhan first argues, and plaintiffs concede, that the square body of the marker prevents it from rolling off a desk or work surface. (*Id.* at 7.) Next, Shinhan contends that the rounded ends, colored bands, and indented end caps "yield the utilitarian advantages of increased user comfort, ease of nib identification, and [mounted] cap storage." (*Id.* at 8.) Therefore, Shinhan argues, the features are functional and not protectable. (*Id.*) Plaintiffs' only argument in response rests on the availability of alternative designs to achieve the same or similar utilitarian advantages. (Pls.' Supplemental Br. (#41) 11-15.) While this may be true, Ninth Circuit precedent instructs that the availability of alternative designs does not guide the inquiry. I note again that defendants carry the burden to prove functionality of Too Marker's registered product configuration at trial or on summary judgment. But plaintiffs have pointed only to alternative designs, a factor that receives less weight than the utilitarian advantage factor defendants persuasively argue. I therefore find plaintiffs have not carried their burden to show likelihood of success on the merits (that is, to show that defendants will likely not prove functionality) at this preliminary stage.

      D.    *Too Marker's Unregistered Trade Dress*

Too Marker carries both burdens on its unregistered trade dress claim for a square end cap—the burden to show nonfunctionality at trial or summary judgment, and the burden to show likelihood of success on the merits. Again, however, plaintiffs point to defendants' failure to "establish[] that the square end cap is better than any other alternative design." (Pls.' Supplemental Br. (#41) 13.) Therefore, I find plaintiffs have not carried their burden of showing likelihood of success on the merits at this preliminary stage.

**II.**    <u>**Irreparable Harm**</u>

Plaintiffs allege they will suffer irreparable harm in the absence of a preliminary

PAGE 8 - OPINION AND ORDER

injunction due to lost sales, irreversible price erosion, and loss of goodwill due to customer confusion. (Mem. in Supp. of Pls.' Mot. for Prelim. Inj. (#8) 30-31.) I recognize plaintiffs will likely suffer some harm in the absence of an injunction, but this harm is only cognizable as "irreparable harm" if there is some likelihood of a valid, nonfunctional trademark. Otherwise, plaintiffs are only asserting the "harm" that flows from legitimate competition. Here, plaintiffs' showing of harm does not justify preliminary relief.

## III.  Balance of Equities

Like plaintiffs' arguments above, defendants similarly allege they will suffer lost sales in the presence of a preliminary injunction. (*See* Defs.' Resp. (#25) 15-16.) They also allege potential harm to the TOUCH brand and market position, as well as wasted inventory if they are precluded from selling their markers. (*Id.*) Plaintiffs contend that defendants would suffer only minimally in comparison. (Mem. in Supp. of Pls.' Mot. for Prelim. Inj. (#8) 32-33.) Again, I recognize that one party will suffer some sort of harm in response to a ruling either way, so I find the balance of equities to be neutral.

## IV.  Public Interest

Plaintiffs correctly argue that trademark law protects the public from confusion. (*Id.* at 34.) Defendants correctly argue that the public has an interest in competition. (Defs.' Resp. (#25) 14-15.) Because plaintiffs failed to establish a likelihood of success on the functionality element of their trademark infringement and unfair competition claims (such that I did not address likelihood of confusion), I find this factor to be neutral at best.

//

//

PAGE 9 - OPINION AND ORDER

## CONCLUSION

For the reasons given above, I DENY plaintiffs' Motion for Preliminary Injunction (#7) and Motion for Temporary Restraining Order (#17). I also DENY defendants' Motion for Extension of Time (#15) as MOOT.

IT IS SO ORDERED.

DATED this 3d day of Dec., 2009.

MICHAEL W. MOSMAN
United States District Judge