**Brenna K. Legaard, OSB No. 00165**
E-mail: brenna@chernofflaw.com
**Susan D. Pitchford, OSB No. 98091**
E-mail: sdp@chernofflaw.com
**CHERNOFF, VILHAUER, McCLUNG & STENZEL, LLP**
601 SW Second Avenue, Suite 1600
Portland, OR 97204
Telephone: (503) 227-5631
Fax: (503) 228-4373

Attorneys for Defendants Shinhan Art Materials, Inc., Shinhan USA, LLC, and C2F Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**TOO MARKER PRODUCTS, INC.**, a Japanese corporation, and **IMAGINATION INTERNATIONAL, INC.**, an Oregon corporation,

Plaintiffs,

v.

**SHINHAN ART MATERIALS, INC.**, a Korean corporation, **SHINHAN USA, C2F, INC.**, an Oregon corporation, and **BONGKEUN HAN**, an individual,

Defendants.

Civil Case No. 09-1013-PK

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING THE FUNCTIONALITY OF PLAINTIFFS' ASSERTED TRADE DRESS**

**TRADEMARK CASE**

## Background

Plaintiff Too Marker Products, Inc. ("Too Marker") claims trademark rights in the configuration of a marker having a square cross-sectional body, a contrasting color band integrally formed and the juncture of the marker body and an end cap, and end caps having square cross-sections and indented terminal portions. Plaintiffs sell a marker embodying that trade dress called the COPIC marker. Plaintiffs claim Defendant Shinhan Art Materials, Inc.'s ("Shinhan") TOUCH marker design, which features similar attributes, is an infringement of Too Marker's federally registered trademark, as well as its unregistered trade dress. However, every marker feature plaintiffs seek to monopolize is functional and therefore Too Marker does not have valid and enforceable rights to either the registered product configuration or the unregistered trade dress. Plaintiffs have no valid trademark rights.

## RELIEF REQUESTED

Shinhan seeks an order granting summary judgment in its favor, dismissing counts I, II, and III of plaintiffs' complaint with prejudice, and directing the Commissioner of Patents and Trademarks to cancel U.S. Trademark Registration No. 3,629,617 pursuant to 15 U.S.C. § 1119.[1]

[1] The remaining counts of the Complaint, IV, V, VI and VII, are the subject of a separate motion to dismiss. See DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, Dct. No. 35.

## Argument

### 1. The Summary Judgment Standard

The "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).

"[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual *disputes* that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The Ninth Circuit has affirmed summary judgment in favor of alleged infringers in product configuration based trademark and trade dress cases where no jury could reasonably find the product configuration or trade dress at issue was not functional. See *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1009-10 (9th Cir. 1992); *Tie Tech, Inc. v. Kinedyne Corporation*, 296 F.3d 778, 787 (9th Cir. 2002); and *Talking Rain Beverage Co., Inc. v. South Beach Beverage Company*, 349 F.3d 601, 605 (9th Cir. 2003). In affirming, the Ninth Circuit rejected the plaintiffs' arguments regarding the

evidentiary value of a trademark registration and the availability of alternative, sometimes "superior," designs.

**2. A Showing of Functionality is Dispositive to All Asserted Trademark Claims**

In order to establish trademark infringement of a product design under the Lanham Act, plaintiffs must show: (1) the design is non-functional; (2) the design has secondary meaning via acquired distinctiveness; and (3) a likelihood of confusion among the consuming public. See *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir. 1992). If the product design is functional, it may not be protected as a trademark. *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006). Functionality is a bar to trademark protection and "trumps all evidence of actual consumer identification of source and all evidence of actual consumer confusion." J. Thomas McCarthy, *McCarthy on Trademarks* § 7:63 (4th ed.); see also *TrafFix Devices, Inc. v. Marketing Displays, Inc.* 532 U.S. 23, 36 (2001) ("[Given a finding of functionality] secondary meaning is irrelevant because there can be no trade dress protection in any event.").

The above analysis applies equally to plaintiffs' Lanham Act unfair competition claim. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 n.2 (9th Cir. 1992). Further, if the Court finds the product configuration and trade dress to be functional then plaintiffs' common law claims are preempted by the federal patent laws under *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964). See *Classic Instruments, Inc. v. VDO-Argo Instruments, Inc.*, 73 Or.App 732, 742-44.

**3. The Burden of Proof Generally Falls on the Party Asserting Trade Dress Protection; The Federal Registration Shifts the Burden to the Alleged Infringer**

By statute, a party asserting a registered product configuration is entitled to a presumption of the trade dress's validity, implicitly including a presumption of nonfunctionality. 15 U.S.C. §1115(a); *Tie Tech*, 296 F.3d at 782-83. The burden is on the alleged infringer to overcome the presumption by demonstrating the features are in fact functional. *Id* at 783-84. However, the mere existence of a registration does not by itself create an issue of material fact and "[i]n the face of sufficient and undisputed facts demonstrating functionality… the registration loses its evidentiary significance." *Id* at 783.

A party asserting an unregistered trade dress is required to demonstrate the trade dress is non-functional. 15 U.S.C. §1125(a)(3); *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 210 ("[§1125(a)(3) requires] a producer show the allegedly infringing feature is not 'functional'"). This burden requires the plaintiff to show "the product feature 'serves no purpose other than [source] identification.'" *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1531 (9th Cir. 1992) (quoting *SK & F, Co. v. Premo Pharmaceutical Laboratories, Inc.*, 625 F.2d 1055, 1063 (3d Cir. 1980)).

**4. The Definition of Functionality and the Ninth Circuit's Test**

"In general terms, a product feature is functional if it is essential to the use or purpose of the article or it affects the cost or quality of the article." *Inwood Laboratories,*

*Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851, n. 10 (1982). As discussed in Defendants' supplemental briefing on functionality and the Court's Opinion and Order denying plaintiffs' motion for a Temporary Restraining Order, a product feature that makes the article more or less useful affects the quality of the article under *Inwood.* Opinion and Order, Dct. No. 47, pp. 5-6; Defendants' Supplemental Brief, Dct. No. 40, p. 7. Conversely, a feature can be nonfunctional if, for example, it is "merely an ornamental, incidental, or arbitrary aspect of the device." *TrafFix Devices*, 532 U.S. at 30. When analyzing the functionality of a product design, the Ninth Circuit instructs courts to consider "(1) whether [the] particular design yields a utilitarian advantage; (2) whether alternative designs are available in order to avoid hindering competition; and (3) whether advertising touts utilitarian benefits of the feature, and (4) whether the design achieves economies in manufacture or use." *Au-Tomotive Gold*, 457 F.3d at 1072, n. 8. "No one factor is dispositive; all should be weighed collectively." *Disc Golf*, 158 F.3d at 1006. However, the Ninth Circuit has acknowledged that post-*TrafFix*, "the existence of alternative designs cannot negate a trademark's [utilitarian] functionality." *Talking Rain*, 349 F.3d at 603.

**5. Application of the Functionality Definition and Test to the Facts of This Case**

***A. Registered Product Configuration – Shinhan's Burden***

The plaintiff's U.S. Trademark Registration, Reg. No. 3,629,617, states the mark consists of a marker having (1) a squarish cross sectional shape with rounded ends in which (2) terminal portions of both end caps of the marker are indented relative to the

body of the marker and (3) a band, which indicates the placement of a contrasting color, is integrally formed in the body of the marker at the juncture of the end cap and body (collectively, the "Registered Configuration"). See Complaint, Dct. No. 1, Ex. B. These are all functional features under both the Supreme Court's broad utilitarian definition and the Ninth Circuit's four factor test.

**a. The Utilitarian Factor Favors Shinhan**

Applying the Supreme Court's *Inwood* definition in combination with the first Ninth Circuit factor, all aspects of the Registered Configuration will affect the quality of the marker because they yield a utilitarian, i.e. useful, advantage. The COPIC marker's squarish cross sectional shape with rounded corners yields the utilitarian advantage of giving the marker greater roll-resistance than a marker having a round cross-section. Cole Decl., ¶ 6. The indented portions of the COPIC marker's end caps yield the utilitarian advantage of enabling one cap to be temporarily stored on the other. Cole Decl., ¶ 8. The contrasting color band yields the utilitarian advantage of indicating to a user which end of the marker is which from virtually any viewing angle. Cole Decl., ¶ 7. Thus, under *Inwood*, the Registered Configuration is functional and, under the Ninth Circuit test, this factor weighs heavily in favor of a finding of functionality.

**b. The Alternative Designs Do Not Disprove Functionality**

As for the second Ninth Circuit factor, plaintiffs have gone to great lengths to prove that alternative designs are available to accomplish, with varying degrees of effectiveness, the same functionality as the Registered Configuration. See, e.g.,

Declaration of Timothy E. Murphy In Support of Plaintiff's Supplemental Brief ("Murphy Decl."), Dct. No. 42, Exs. A and B. However, far from proving that the trade dress is nonfunctional, plaintiffs' evidence actually establishes the functionality of these features.

As the Court found in denying plaintiffs' requests for preliminary relief, "the language in *TrafFix* and the Ninth Circuit's interpretation of it as significantly reducing the importance of alternative designs diminishes plaintiffs' argument that 'quality' refers to a design's superiority as compared to alternatives." Opinion and Order, Dct. No. 47, p. 7. A "product feature need only have *some* utilitarian advantage to be considered functional." *Disc Golf*, 158 F.3d at 1008 (emphasis in original). The Ninth Circuit "has never held, [as plaintiffs have urged], that the product feature must provide *superior* utilitarian advantages." *Id* (emphasis in original).

Moreover, plaintiffs submitted a veritable catalog of marker features which provide the same functionality as the features of their claimed trade dress. Exhibit B to the Murphy Declaration is a chart comparing features of a variety of markers. In an effort to establish that other features achieve the same functionality as the features of its purported trade dress, it includes columns identifying various functional features of the markers and describing how, if at all, the various markers resist rolling ("Roll Resistance"), identify nibs ("Tip Designator"), and store caps ("Cap Holding"). In submitting this catalog of marker features and describing those features as functional, plaintiffs prove the functionality of the analogous COPIC features. Alternative designs

"may indicate whether the trademark itself embodies functional or merely ornamental aspects of the product." *Talking Rain* at 603. Here, plaintiffs have offered essentially the same evidence that the Ninth Circuit found fatal to Tie Tech's claim to nonfunctional trade dress. *Tie Tech*, 296 F.3d at 786. Tie Tech presented evidence that there are other webcutters with a variety of appearances and features that effectively cut webbing. The Ninth Circuit acknowledged that "this evidence certainly supports Tie Tech's contention that adequate alternative designs exist which 'admirably do the job,' but to Tie Tech's detriment, it goes further." *Id.* Tie Tech's-- and plaintiff's-- evidence also establishes that the alternative features offer a different set of advantages and disadvantages which therefore affect the usefulness of the article and provide an independent basis for customer preference for a particular product that is "wholly distinct from a customer's desire to be assured that a particular entity made, sponsored, or endorsed a product." *Id.* at 786-87.

Plaintiffs acknowledge the "square-bodied design provides the incidental benefit of roll resistance." Corrected Plaintiff's Supplemental Brief On Non-Functionality, Dct No. 43, p. 12. Plaintiffs also state that various alternative designs "presumably identify the shape of the nib as well as and likely better than a color band," *id.* at p. 14, and in so doing concede the function of the color band. By identifying alternate features that accomplish the same functionality as the features of its purported trade dress, plantiffs have not only conceded but actually proven that those features are functional.

**c. The Touting Factor Favors Shinhan**

Applying the third Ninth Circuit factor, Plaintiffs have touted the utilitarian benefits of at least one aspect of the Registered Configuration, the roll resistance of the square body. See Declaration of Brenna K. Legaard in Support of Defendants' Response to Plaintiffs' Motion for a Temporary Restraining Order, Dct. No. 32, ¶ 4 and Ex. 3. Thus, this factor weighs in favor of a finding of functionality.

**d. The Cost of Manufacturing Factor is Neutral**

Applying the fourth Ninth Circuit factor, Plaintiffs' have asserted aspects of the Registered Configuration increased the cost of manufacturing the COPIC markers compared to other markers. While the fact that a product design achieves manufacturing efficiencies may tend to show the design is functional, there is nothing to suggest that the converse is true, i.e. that an expensive design is non-functional. Various features of a Ferrari are presumably more expensive to design and manufacture than the equivalent features of a Honda, however this does necessarily make the Ferrari's features "ornamental, incidental, or arbitrary" aspects of the automobile if those features affect the quality of the Ferrari. Thus, this factor is neutral.

Individually, the four Ninth Circuit factors are either neutral or favor a finding of functionality. Therefore, when weighing the factors collectively, Shinhan submits the Court should find the Registered Product Configuration to be functional.

***B. Unregistered Trade Dress - Plaintiff's Burden***

Plaintiffs have the burden of showing the trade dress of a square end cap for a marker is non-functional. *Supra.* The record contains no facts to support such a conclusion. To the contrary, just as with the marker body, the square shape of the cap contributes to the roll resistance of the cap. Cole Decl. at ¶ 6. Because Plaintiffs have failed to meet their burden of showing non-functionality, Shinhan submits the Court should find the unregistered trade dress to be functional.

**5. Conclusion**

Shinhan has shown there is no material fact open to dispute that would prevent a reasonable jury from finding the Registered Product Configuration and the unregistered trade dress to be functional. Plaintiffs have not disputed, and in fact have themselves submitted evidence showing that the square cross-sectional shapes of the marker body and end caps provide roll resistance, the contrasting color band provides a means of nib identification, and the indented cap provides a means for cap storage. These are all functional features under both the Supreme Court's *Inwood* definition and the Ninth Circuit's four-factor functionality test. Therefore, the Court should find the Plaintiffs' registered trademark to be invalid, find both the registered product configuration and the unregistered trade dress to be unenforceable, grant the motion, and enter summary judgment in favor of the Defendants on Counts I, II and III of the Complaint.

DATED: December 24, 2009

CHERNOFF, VILHAUER, McCLUNG & STENZEL, LLP

/s/ Brenna K. Legaard
Brenna K. Legaard, OSB No. 00165
Susan D. Pitchford, OSB No. 98091
Telephone: (503) 227-5631
Attorneys for Defendants Shinhan Art Materials, Inc., Shinhan USA, LLC and C2F Inc.